1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAIDONG CHEN, et al., | Case No. 16-CV-00135-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| FLEETCOR TECHNOLOGIES, INC., | Re: Dkt. No. 55 |
| Defendant. | |

Plaintiffs Naidong Chen ("Chen") and Kumar Manindra ("Manindra") (collectively, "Plaintiffs") bring this suit for breach of contract and tort against Fleetcor Technologies, Inc. ("Defendant") for alleged misconduct related to the vesting of Plaintiffs' stock options. Before the Court is Defendant's Motion for Summary Judgment. ECF No. 55 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    Start of Chen's and Manindra's Employment with Defendant

1

In March 2013, Defendant acquired the enterprise business unit of TeleNav, Inc ("TeleNav").  Plaintiffs were employees in the enterprise business unit at TeleNav when it was acquired.  Plaintiffs were given the option of remaining TeleNav employees, becoming employees of Defendant's, or looking for new work.  ECF No. 58-1 at 253, Deposition of Kumar Manindra ("Manindra Depo.") at 55:1–13; ECF No. 58-1 at 216, Deposition of Naidong Chen ("Chen Depo.") at 56:1–57:20.  Chen was considered a "key employee" in the transaction: the deal could have been canceled if Chen did not agree to become an employee of Defendant.  ECF No. 58-1 at 107, Deposition of Jeff Lamb ("Lamb Depo.") at 27:4–12 ("Q. And so if Frank Chen had not accepted an offer of employment to join FleetCor, FleetCor would have canceled the merger with Telenav? A. Correct.").

In March of 2013, Defendant sent Plaintiffs offer letters whose purpose was to "describe the general terms and conditions of [Plaintiffs'] employment with FleetCor."  ECF No. 56 at 101 ("Chen Offer Letter"); ECF No. 56 at 156 ("Manindra Offer Letter").  Chen was offered a base annual salary of $188,000, an annual bonus up to 20% of Chen's base salary, and a "retention bonus" of $14,000 after 6 months.  Chen Offer Letter at 1.  Manindra was offered an annual base salary of $158,000, an annual bonus of 5% of Manindra's base salary, and a retention bonus of $10,500 after 6 months and an additional retention bonus of $7,500 after one year.  Manindra Offer Letter at 1.  In June of 2013, Chen's base salary was modified by a second, identically worded offer letter to $195,500, but the terms of the offer letter otherwise remained identical. ECF No. 156 at 103.

Chen and Manindra were also offered "FleetCor Performance Stock Options" in the offer letters.  Chen was offered 10,000 stock options, and Manindra was offered 1,500 stock options. The offer letters contained the following language regarding the stock options:

> You will be awarded 10,000 of FleetCor Performance Stock Options.  We will work together to establish the performance criteria over the next month.  These options require Board approval which we will seek as soon as administratively practical.  All options will be granted at the then fair market value.

Chen Offer Letter at 1; *see also* Manindra Offer Letter at 1 (containing identical language except

2

indicating 1,500 stock options were awarded).

The offer letters also contained an "Employment At Will" section that stated: "This letter does not create a contract of employment or a contract for benefits.  Your employment relationship with FleetCor is at-will.  At either your option or FleetCor's option, your employment may be terminated at any time, with or without cause or notice."  Chen Offer Letter at 2; Manindra Offer Letter at 2.  On a signature line that stated "Accepted By," Chen and Manindra each signed their respective offer letters.  Chen Offer Letter at 2; Manindra Offer Letter at 2.

### 2.  Representations Concerning Vesting of the Stock Options From May 2013 to June 2014

No written representations were provided to Chen or Manindra concerning the performance criteria that were to be used to determine whether the stock options would vest. However, Plaintiffs provide evidence of multiple oral representations concerning the stock options and their vesting schedule.  In a declaration filed in support of the opposition to the instant motion for summary judgment, Chen states that Carrie Kasitz, a human resources representative of Defendant, and Jeff Lamb, Chen's and Manindra's supervisor, made representations concerning the vesting of the stock options before Chen signed the employment agreement in March of 2013. ECF No. 58-2, Declaration of Naidong Chen ("Chen Decl.") ¶ 6.  Specifically, Chen declares that Kasitz stated that "all of the Options would vest after [Chen's] first year of employment if we did well." *Id.*  Plaintiffs also file a declaration in which Manindra states that Kasitz made the same representations to Manindra and that Chen relayed Lamb's statements to Manindra.  ECF No. 58-3, Declaration of Kumar Manindra ("Manindra Decl.") ¶ 6, 10.

Although Chen's and Manindra's declarations indicate that Lamb's statement regarding the options vesting within one year only mention the timeline for vesting rather than performance criteria, Chen's own deposition statements indicate that Lamb's representations were conditional on the business doing well.  *See* ECF No. 56 at 28, Chen Depo. at 82 ("[Lamb] said if we're doing well, we can vest the whole—the whole 10,000 shares one time . . . . He was not very specific [on the meaning of 'doing well'].").

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

On April 25, 2013, the Compensation Committee for Defendant's Board of Directors (the "Compensation Committee"), approved the grant of the options to Chen and Manindra.  ECF No. 58-1 at 22–27, Deposition of Crystal Williams, Defendant's Global Vice President of Human Resources ("Williams Depo.") at 114–119.  However, the Compensation Committee did not establish any performance criteria for vesting of the stock options.  *Id.*

"A few months after" Chen began working at FleetCor, "Lamb told [Chen] that 50% of the Options would vest in 2014 [the following year]."  *Id.* ¶ 10; Manindra Decl. ¶ 10 (indicating that Chen told Manindra about these statements).  As with Lamb's statements that occurred before Chen and Manindra began working for Defendant, deposition testimony indicates that the vesting was not unconditional, but was tied to reaching certain goals.  *See* ECF No. 58-1 at 112–13, 123–24, Deposition of Jeff Lamb ("Lamb Depo.") at 41–44 (Lamb stating that he had set goals tied to vesting, but that he had noted to Chen and Kumar that those goals had not yet been approved), 68–69 (Lamb indicating that he told Chen and Manindra that he had "submitted the goals detailed in the attached and that they should therefore work towards these objectives" and that Chen and Manindra "proceeded with the understanding that if certain [financial] targets were met they would vest in 50 percent of their performance options").

After one year, in April 2014, even though Chen and Manindra's division met the goals set by Lamb, the Compensation Committee decided to vest 25% of Chen and Manindra's stock options rather than 50%.  Chen Decl. ¶ 11; Williams Depo. at 142–43.  At the meeting concerning vesting, Ronald Clarke, Defendant's CEO, stated that Defendant did not need to vest 50% of the stock options because the standards set by Lamb had never been "formally approved."  Williams Depo. at 142–43.

### 3. Representations Concerning Performance Criteria from May 2014 to June 2015

After Defendant vested 25% of the options rather than 50% of the options, "Lamb called [Chen] to apologize for not getting the 50% vesting that he had promised a few months earlier. But he told [Chen] that 50% of the Options would vest in 2015 and the remaining 25% would vest

4

in 2016." Chen Decl. ¶ 11; *see also* Manindra Decl. ¶ 11. Chen was also awarded 2,500 additional unvested stock options in compensation for not reaching 50% vesting. Chen Decl. ¶ 11.

On May 5, 2014, Lamb proposed new performance criteria to Clarke and Williams for vesting that would occur by 2015. ECF No. 58-1 at 174. These performance criteria did not involve solely financial goals, but goals for the success of a particular app on which Chen and Manindra had been working. *Id.* These performance criteria were never approved by the Compensation Committee or Clarke, ECF No. 58-1 at 74 ("Additional performance criteria were proposed but not approved by the Compensation Committee."), and were never communicated to Chen or Manindra, Chen Decl. ¶ 12; Manindra Decl. ¶ 12.

Approximately one month later, in June 2014, Chen transferred from working on the apps to working for Defendant's Chief Information Officer, John Reed. ECF No. 58-1, May 22, 2014 Email from Lamb to Williams Concerning Start of Transfer ("May 22, 2014 Email"). Chen stopped all work on the apps described in the 2014-2015 proposed performance criteria by around June or July 2014. Chen Decl. ¶ 12. Around June or July 2014, Manindra also transferred positions and stopped working on the apps. Manindra Decl. ¶ 12. Lamb and Williams acknowledge that Chen's and Manindra's transfer would have a negative impact on the apps (and implicitly on the criteria Lamb had proposed for Chen's and Manindra's options to vest). *See* May 22, 2014 Email; Williams Depo. at 177.

On November 14, 2014, Lamb sent an email to another employee of Defendant's that stated that "[i]t is looking highly unlikely that any of [the options] will vest beyond what was vested last year." ECF No. 58-1 at 168, Nov. 14, 2014 Email from Lamb to Mike Scarbrough. By the end of 2014, Williams also knew "it was certain" that the criteria set by Lamb were not going to be achieved, and that Chen's and Manindra's former "division was failing." Williams Depo. at 69. Chen and Manindra were not informed by Williams or Lamb that the app-based proposed performance criteria were unlikely to be satisfied or impossible to satisfy at the time when Williams and Lamb discovered that information. Chen Decl. ¶ 12; Manindra Decl. ¶ 12.

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

From May 2014 to June 2015, Chen and Manindra sent repeated questions to Williams and Lamb about when the options would vest.  For example, on September 3, 2014, Manindra emailed Williams and stated that he had been told that his stock options would vest at the "end of the year."  ECF No. 58-3 at 12.  Williams responded that "[o]ur performance vested stock options are generally a three year vest."  *Id.*  Also, from April 2015 to June 2015, Manindra sent Williams six emails about the vesting of the stock options, but Williams did not respond.  Manindra Decl. ¶ 16. Chen emailed his then-supervisor Reed in February 2015 and August 2015 asking about the vesting of both his and Manindra's stock options, but the record contains no indication that Reed responded.  ECF No. 58-1 at 207–08.

On June 30, 2015, Defendant's Chief Financial Officer Eric Dey ("Dey") asked Lamb and Williams about the vesting of the stock options via email.  ECF No. 58-1 at 85.  In response, Williams stated that "no criteria was established or the criteria wasn't met and the shares were forfeited.  The second is more convenient, but it isn't quite true."  *Id.* at 84.

#### 4.      End of Employment with Defendant

While it is unclear exactly when, by August 2015, Chen and Manindra learned that the performance criteria for the vesting of their stock options were based on apps on which they were no longer working.  Manindra Decl. ¶ 17 ("Around August 2015, I was told by Chen's boss, John Reed, that the Options were gone and would never be available because some unspecified App-based performance criteria were not attained."); Chen Decl. ¶ 12 ("I only found out about these App-based vesting criteria sometime around August 2015."); Chen Depo. at 193 ("John Reed told me the remaining stock options were already gone.  He said, we can start a new plan for you."). The evidence in the record indicates that Chen and Manindra both performed well during their time working for Defendant.  Chen Decl. ¶ 17; Manindra Decl. ¶ 18.

Chen and Manindra assert that they would not have worked for Defendant or continued working for Defendant from 2013 to 2015 if they had known that the stock options were essentially impossible to vest.  Plaintiff's expert estimates that Chen lost $538,875 and Manindra

6

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    lost $135,188 due to the lack of vesting.  ECF No. 58-1 at 281.  Moreover, after leaving, Chen and

2    Manindra obtained higher-paying jobs.  *See* ECF No. 58-1 at 242 (indicating that Chen received

3    an offer from eDriving with a $255,000 base salary and approximately 80,000 stock options); ECF

4    No. 58-1 at 272 (indicating that Manindra received an offer from LinkedIn with a $215,000 base

5    salary and restricted stock units with a value of approximately $800,000).

6          **B.      Procedural History**

7          On December 10, Plaintiffs filed the instant case in the California Superior Court for the

8    County of Santa Clara.  ECF No. 1 Ex. A.  On January 8, 2016, Defendant removed the case to

9    federal court, and asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332.  ECF No. 1.

10         On January 12, 2017, Defendant filed the instant Motion for Summary Judgment.  ECF

11   No. 55 ("Mot.").  On January 26, 2017, Plaintiff filed an opposition, ECF No. 58 ("Opp'n"), and

12   on February 2, 2017, Defendant filed a reply, ECF No. 60 ("Reply").

**II.    LEGAL STANDARD**

     **A.      Summary Judgment**

15         Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

16   that there is "no genuine issue as to any material fact and that the moving party is entitled to

17   judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the

18   outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

19   material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

20   the nonmoving party.  *Id.*

21         The party moving for summary judgment bears the initial burden of identifying those

22   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

23   issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

24   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

25   reasonable trier of fact could find other than for the moving party.  However, on an issue for which

26   the opposing party will have the burden of proof at trial, the moving party need only point out

27

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

1   "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

2   Once the moving party meets its initial burden, the nonmoving party must go beyond the

3   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

4   genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

5   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

6   *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine

7   issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party

8   has the burden of identifying, with reasonable particularity, the evidence that precludes summary

9   judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to

10  judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

11  At the summary judgment stage, the court must view the evidence in the light most

12  favorable to the nonmoving party: if evidence produced by the moving party conflicts with

13  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

14  forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152,

15  1158 (9th Cir. 1999).

16  ## B.      State Law in Diversity Cases

17  "In determining the law of the state for purposes of diversity, a federal court is bound by

18  the decisions of the highest state court."  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530

19  (9th Cir. 2011).  If the state's highest court has not decided an issue, it is the responsibility of the

20  federal courts sitting in diversity to predict "how the state high court would resolve it."  *Id.*; *AirSea*

21  *Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks

22  omitted).  In the absence of clear authority, the Court looks for guidance from decisions of the

23  state appellate courts and other persuasive authorities, such as decisions from courts in other

24  jurisdictions and treatises.  *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir.

25  1996).  "In assessing how a state's highest court would resolve a state law question[,] . . . federal

26  courts look to existing state law without predicting potential changes in that law."  *Ticknor v.*

United States District Court
Northern District of California

28  Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

*Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).

## III.    DISCUSSION

Plaintiffs assert five causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) common count for services rendered (an accounting for services rendered), (4) negligent misrepresentation, and (5) fraudulent concealment.[1] Defendant argues that each of the causes of action fail and also makes evidentiary objections. The Court addresses each cause of action in turn and then discusses Defendant's evidentiary objections.

### A.    Breach of Written Contract

Plaintiffs argue that the following provision found in the offer letters (hereinafter referred to as "Stock Option Provision") has been breached:

> You will be awarded 10,000 of FleetCor Performance Stock Options. We will work together to establish the performance criteria over the next month. These options require Board approval which we will seek as soon as administratively practical. All options will be granted at the then fair market value.

Chen Offer Letter at 1; *see also* Manindra Offer Letter at 1 (containing identical language except that he was only awarded 1,500 stock options).[2]

It is undisputed that Plaintiffs were awarded the promised number of stock options here. However, it is also undisputed that the "performance criteria" referred to in the second sentence of the Stock Option Provision were never established. Plaintiffs' complaint asserts that Defendant "breached these agreements because it [1] never established any performance criteria for either Chen or Manindra, [and] [2] it never worked with Chen or Manindra to establish those criteria."

---

[1] Plaintiffs use the term "concealment" in their complaint. However, Plaintiffs' allegations in the complaint address the elements of fraudulent concealment, and both parties refer to the claim as a cause of action for fraudulent concealment in the briefing on the instant motion for summary judgment. Accordingly, the Court uses the term "fraudulent concealment" for this cause of action throughout this order.

[2] The Court notes that Plaintiffs' cause of action is solely for breach of a *written* contract and that Plaintiffs have not brought a cause of action or made any allegation concerning a breach of oral contract. Defendant raises this point in the instant motion for summary judgment. Plaintiffs do not argue otherwise.

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Compl. ¶ 26.

2         Plaintiffs' two theories of breach imply that there are two obligations arising from the

3    performance criteria provision.  On the one hand, Plaintiffs assert that the provision contains an

4    obligation to "work together" to establish performance criteria.  On the other hand, Plaintiffs assert

5    that, rather than just an agreement to work together to establish criteria, the offer letters create an

6    affirmative obligation for Defendant to set performance criteria.

7         Defendant argues that no breach of contract occurred in this case because no enforceable

8    written contract was formed between Plaintiffs and Defendant as to stock options.  In the

9    alternative, Defendant argues that Plaintiffs cannot bring a breach of contract claim because

10   Plaintiffs also violated the terms of the offer letters.

11                    **1.      Formation of Contract**

12        To determine whether a contract has been formed courts look to "(1) whether both or all

13   parties, with the capacity to contract, manifest objectively an intent to be bound by the agreement;

14   (2) whether the essential terms of the agreement are sufficiently definite to be enforced; (3)

15   whether there is consideration; and (4) whether the subject matter of the agreement and its

16   performance are lawful."  1 Williston on Contracts § 3:2 (4th ed.); *see also U.S. ex rel. Oliver v.*

17   *Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) ("Under California law, the essential elements for

18   a contract are (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) "[a] lawful object;"

19   and (4) "[s]ufficient cause or consideration." (quoting Cal. Civ. Code § 1550)).

20        "Contract formation requires mutual consent, which cannot exist unless the parties 'agree

21   upon the same thing in the same sense.'"  *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109

22   (2013) (citation and internal quotation marks omitted).  "The manifestation of mutual consent is

23   generally achieved through the process of offer and acceptance."  *DeLeon v. Verizon Wireless,*

24   *LLC*, 207 Cal. App. 4th 800, 813 (2012).  "Mutual assent is determined under an objective

25   standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable

26   meaning of their words and acts, and not their unexpressed intentions or understandings."  *Pac.*

27                                    10

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1  *Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 309 (2014) (citation and internal

2  quotation marks omitted).  "Where the existence of a contract is at issue and the evidence is

3  conflicting or admits of more than one inference, it is for the trier of fact to determine whether the

4  contract actually existed . . . ."  *HM DG*, 219 Cal. App. 4th at 1109; *see also Xin Liu v. Amway*

5  *Corp.*, 347 F.3d 1125, 1138 (9th Cir. 2003) (holding that, under California law, a court must

6  "take[] into account . . . all [] pertinent evidence[] in ascertaining the terms on which a worker was

7  employed.").

8         Defendant argues that no contract was formed concerning the performance criteria because

9  (1) the parties formed an unenforceable "agreement to agree," (2) the terms of the Stock Option

10  Provision were indefinite, (3) an express provision in the offer letters stated that the offer letters do

11  not create contracts for employment or benefits, and (4) the parties regularly modified the terms of

12  employment.  The Court addresses each argument in turn.

### a.        Agreement to Agree

14         "It is a fundamental principle of California contracts law that no contract is formed where

15  essential elements are reserved for future agreements."  *City Solutions, Inc. v. Clear Channel*

16  *Commc'ns, Inc.*, 201 F. Supp. 2d 1035, 1040–41 (N.D. Cal. 2001); *see also Copeland v. Baskin*

17  *Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1255–56 (2002) ("It is still the general rule that where any

18  of the essential elements of a promise are reserved for the future agreement of both parties, no

19  legal obligation arises (until such future agreement is made).").  "Preliminary negotiations or

20  [agreements] for future negotiations are not the functional equivalent of a valid, subsisting

21  agreement.  'A manifestation of willingness to enter into a bargain is not an offer if the person to

22  whom it is addressed knows or has reason to know that the person making it does not intend to

23  conclude a bargain until he has made a further manifestation of assent.'"  *Bustamante v. Intuit,*

24  *Inc.*, 141 Cal. App. 4th 199, 213–14 (2006) (citations omitted).

25         However, even though a court will not enforce a contract provision if essential elements of

26  that term are subject to future negotiations, courts will enforce "[a] contract to negotiate the terms

27

28  Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

11

of an agreement." *Copeland*, 96 Cal. App. 4th at 1257; *see also Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1035 (9th Cir. 2000) ("Unlike an agreement to agree, an agreement to use best efforts to achieve a common objective is a closed, discrete, and actionable proposition."). Under a "contract to negotiate," "[a] party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." *Copeland*, 96 Cal. App. 4th at 1257. "Failure to agree is not, itself, a breach of the contract to negotiate." *Id.* "[D]amages for breach of a contract to negotiate an agreement are measured by the injury the plaintiff suffered in relying on the defendant to negotiate in good faith." *Id.* at 1262–63.

Here, the Stock Option Provision states that "[w]e will work together to establish the performance criteria over the next month." Chen Offer Letter at 1. Plaintiffs assert that the offer letters constitute contracts that create obligations (1) to "work together" with Plaintiffs to set performance criteria, and (2) to actually establish performance criteria.

With respect to the first obligation, the Court agrees with Plaintiffs. The plain language of the offer letters states that the parties will work together "over the next month," to "establish the performance criteria." *Copeland*, 96 Cal. App. 4th at 1256 n.4 (finding enforceable an agreement that the parties would "bargain in good faith for the purpose of reaching an agreement." (quoting *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1035 (1992)). Moreover, Defendant does not argue in its motion for summary judgment that the offer letters did not require the parties to "work together" to establish performance criteria. Defendant's only argument regarding the "work together" obligation, discussed below, is that Plaintiffs cannot enforce the obligation because Plaintiffs also breached the obligation. Mot. at 13. Accordingly, the Court finds that the Stock Option Provision in the offer letters obligates Defendant to work together with Plaintiffs to establish performance criteria. That is not an unenforceable "agreement to agree," but an agreement to negotiate performance criteria.

Second, Plaintiffs assert that the Stock Option Provision contains an obligation to actually

United States District Court
Northern District of California

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    "set performance criteria" in addition to "working together" to establish such performance criteria.

2    Defendant argues that, with respect to setting the performance criteria, the contract solely creates

3    an unenforceable "agreement to agree."  Mot. at 12 (arguing that the Stock Option Provision "does

4    not require the parties to establish criteria in the next month nor does it require either party to

5    accept the other's proposed criteria.").  In response, Plaintiffs argue that "nothing in the contracts

6    suggests that FleetCor was free to refuse to agree to any vesting criteria."  Opp'n at 15–16.

7            Plaintiffs are incorrect.  The specific terms of the agreement state that "[w]e will work

8    together to establish the performance criteria over the next month."  Chen Offer Letter at 1.  The

9    Stock Option Provision does not specify that Plaintiffs or Defendant were obligated to reach an

10   agreement on any specific performance criteria, or that performance criteria had to be set at all.

11   Therefore, rather than an agreement to set performance criteria, this provision constitutes an

12   agreement to "reserve[] for the future" an essential element of the Stock Option Provision.

13   *Copeland*, 96 Cal. App. 4th at 1255–56 ("It is still the general rule that where any of the essential

14   elements of a promise are reserved for the future agreement of both parties, no legal obligation

15   arises (until such future agreement is made)."); *see also Buxbaum Holdings, Inc. v. Haggar*

16   *Clothing Co.*, 2014 WL 12577071, at *3 (N.D. Tex. Jan. 7. 2014) (applying California law,

17   specifically *Copeland*, and finding provision stating that the plaintiff "shall be entitled to a

18   performance bonus to be mutually agreed upon by the parties" to be an unenforceable agreement

19   to agree).

20           Accordingly, the Court finds that the parties entered into an enforceable agreement to work

21   together to establish performance criteria—an agreement to negotiate—but to the extent the Stock

22   Option Provision constituted an agreement to set performance criteria, it was an unenforceable

23   agreement to agree.

24                            **b.      Indefiniteness**

25           Defendant argues that no contract was formed because the Stock Option Provision was too

26   indefinite to be enforced.  To be a valid enforceable contract under California law, a contract must

27

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

be sufficiently definite "for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante*, 141 Cal. App. 4th at 209 (quoting *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991)) (internal quotation marks omitted). "The terms of a contract are reasonably certain if they provide a basis [1] for determining the existence of a breach and [2] for giving an appropriate remedy." *Id.* (quoting Restatement (Second) of Contracts § 33(2)) (internal quotation marks omitted). Moreover, "[c]ourts will not enforce vague promises about the terms and conditions of employment that provide no definable standards for constraining an employer's inherent authority to manage its enterprise. It is to be expected that many alleged employer promises will be unable to cross this threshold of definition to become enforceable contract claims." *Scott v. Pac. Gas & Elec. Co.*, 11 Cal. 4th 454, 473 (1995), *disapproved on other grounds by Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 352 n.17 (2000). The Court first addresses whether the contract is sufficiently clear to show the existence of a breach, and then discusses whether there is a sufficiently definite remedy.

The Court held above that the alleged obligation to actually establish performance criteria was an unenforceable agreement to agree. Therefore, the Court only needs to address whether the agreement to "work together to establish performance criteria" is too indefinite to enforce. The Court does not find this term to be too indefinite to enforce. While "work together" is vague as to what process is required, the plain language indicates that, at the very least, the parties needed to take steps to establish performance criteria in a collaborative process. In *Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, the Ninth Circuit found that an oral agreement between contractors to "work together" to create a team bid to Boeing was an enforceable agreement because it was an agreement to "use best efforts to achieve a common objective" that was "closed, discrete, and actionable." *Id.* at 1035. Similarly, here, the parties agreed to "work together" to establish performance criteria over a period of a month, which, like the "work together" agreement in *Lockheed Sanders*, was a "closed, discrete, and actionable" goal.

As to a remedy, *Copeland* provides that reliance damages are available for contracts to

14

United States District Court
Northern District of California

negotiate.  In Plaintiffs' declarations, Plaintiffs assert that they relied on the promise to work together to set performance criteria by working for Defendant rather than another employer that would pay more.  Chen Decl. ¶ 15; Manindra Decl. ¶ 15.  Thus, there is evidence in the record that Plaintiffs were damaged through reliance on the promise to "work together" to establish performance criteria "over the next month."  Accordingly, the measure of reliance damages is sufficiently definite.[3]  *Copeland*, 96 Cal. App. 4th at 1257.

Accordingly, the Court finds that Plaintiffs have established sufficiently definite terms and remedies to avoid finding the agreement to negotiate void for indefinitess.

### c.    Disclaimer

Defendant also argues that no contract was formed between Plaintiffs and Defendant as to any provision in the offer letters due to an at-will disclaimer in the agreement.  The offer letters contain the following provision:

> Employment at Will
> This letter does not create a contract of employment or a contract for benefits. Your employment relationship with FleetCor is at-will.  At either your option or FleetCor's option, your employment may be terminated at any time, with or without cause or notice.

Chen Offer Letter at 2; Manindra Offer Letter at 2.

Normally, an at-will provision in an agreement renders the agreement an "at-will employment contract."  *See Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1272

---

[3] Plaintiffs argue that they should receive expectation damages instead of, or in addition to, reliance damages in the instant case.  However, under *Copeland*, expectation damages cannot be awarded.  *Copeland*, 96 Cal. App. 4th at 1257 (granting the defendant's motion for summary judgment because the plaintiff only provided evidence of expectation damages rather than reliance damages).  Even if expectation damages were allowed, they would be too indefinite to be enforced here.  Plaintiffs point to the expert report of Fred Whittlesey ("Whittlesey Report") for a calculation of damages.  ECF No. 58-1 at 280, Expert Report of Fred Whittlesey ("Whittlesey Rep.").  In the Whittlesey Report, Whittlesey states that, if the stock options had all vested, Chen would be owed $538,875 and Manindra would be owed $135,188 plus interest for failing to establish performance criteria.  Whittlesey Rep. at 6.  However, the Whittlesey report is based on the assumption that *all* of the stock options would have vested.  The Stock Option Provision provides no indication that the performance criteria that the parties were supposed to "work together" to establish would have resulted in all of Plaintiffs' stock options vesting.  In fact, that is the sort of determination that is part of an "employer's inherent authority to manage its enterprise."  *Scott*, 11 Cal. 4th at 473.

15

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    (9th Cir. 1990) (distinguishing between a "terminable-at-will employment contract" with a

2    "terminable-only-for-cause employment contract").  Such an at-will provision allows an employer

3    to fire an employee with or without cause or *prospectively* modify the terms of employment.  *See*

4    *DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th 629, 636 (1997) ("[W]ith respect to an at-

5    will employee, the employer can terminate the old contract and make an offer for a unilateral

6    contract under new terms.").  An employer, however, cannot alter the terms of such a contract

7    retroactively.  *See id.*

8         In this case, the employment-at-will provision does not only state that employment is at-

9    will, but that the offer letter "does not create a contract of employment or a contract for benefits."

10   The Court first addresses the disclaimer of a "contract for employment," and then addresses the

11   disclaimer of a "contract for benefits."

12        First, the Ninth Circuit and a district court in this district have held that language

13   disclaiming a "contract for employment" in a section concerning at-will employment does not

14   eliminate the existence of an employment contract in its entirety.  In *Ashbey v. Archstone Prop.*

15   *Mgmt., Inc.*, 612 F. App'x 430 (9th Cir. 2015), the Ninth Circuit addressed an "acknowledgement"

16   signed by an employee that the employee manual "did not 'create any contractual rights.'"  *Id.* at

17   431.  The Ninth Circuit held that because the "exclusion of contractual obligations is placed within

18   two sentences dealing only with the at-will employment relationship . . . , [t]he exclusion [] serves

19   only to reinforce that [the employee] has no contractually created rights beyond those created by

20   at-will employment."  *Id.*  The Ninth Circuit held that an alternative reading would "create an

21   absurdity" because otherwise the employee would have no means to enforce the provisions

22   "outlining [the employee's] compensation, sick leave, vacation and holidays, and retirement

23   savings, among others."  *Id.*

24        Similarly, in *Weingand v. Harland Financial Solutions, Inc.*, 2012 WL 3763640 (N.D. Cal.

25   Aug. 29, 2012), a district court in this district discussed a disclaimer in a business's "Code of

26   Conduct," which stated that "[t]his Code of Business Conduct is not an employment contract."  *Id.*

27                                                16

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

at *3.  The *Weingand* court held that the disclaimer "does not expressly govern the precise circumstance presented here" because "Defendant's claim does not touch on Plaintiff's at-will status."  *Id.*  "Thus, the fact that the Code of Conduct does not create an employment contract—in that it does not create an exception to at-will employment—does not mean it does not create a contract of any sort."  *Id.*

Here, just as in *Ashbey* and *Weingand*, the "at will" provision of the offer letters does not eliminate the existence of a contract in its entirety.  Instead, because the provision is located in the "Employment at Will" section alone, and the rest of the offer letter contains indicia of offer and acceptance, the Court finds that the disclaimer only affects the employment-at-will status of the employment agreement and does not prevent the creation of a contract.  Moreover, the contract at issue here was a contract to work together to establish performance criteria, not a contract for employment.  Therefore, by its own terms, the disclaimer does not specifically apply.

Second, with respect to the disclaimer of a "contract for benefits" the holdings of *Ashbey* and *Weingand* still apply.  Indeed, the language in *Ashbey* was a disclaimer of "any contractual rights."  Moreover, the offer letters in this case contained a section addressing "Benefits."  That section solely addressed Defendant's medical and dental insurance plans, life insurance plans, 401(k) plans, and vacation policies.  In contrast, the terms concerning stock options were contained in an entirely different section called "Equity."  Therefore, even if the disclaimer was effective as to the various "benefits" described in the benefits section of the offer letters, that disclaimer does not affect the creation of a contract concerning stock options and performance criteria.

Accordingly, the Court finds that the disclaimer contained in the at-will provision of the offer letters does not eliminate the creation of a contract between Plaintiffs and Defendant.

### d.     Later Modifications

Defendant argues that no contract could have formed between the parties concerning the stock options because the contract was modified in other ways during Plaintiffs' tenure working

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

for Defendant.  For example, Plaintiffs received multiple raises and changes in positions during the period of time when they worked for Defendant.  However, under California law, "[a]n executed oral agreement will serve as a modification of a written agreement without regard to the presence or absence of a [sic] consideration." *Eluschuk v. Chem. Eng'rs Termite Control, Inc.*, 246 Cal. App. 2d 463, 469 (1966) (finding an oral agreement was executed where the parties discussed and "mutually agreed" to a change in the provisions of a written contract).  "[T]he effect [of a subsequent oral agreement] is to alter only those portions of the written contract directly affected by the oral agreement leaving the remaining portions intact." *Id.*  In order to completely eliminate the terms of a prior contract with a new contract, Defendant would need to show that a novation occurred, which requires that the parties "intend to extinguish the [original] written contract." *Id.* at 468.

Here, Defendant makes no argument and presents no evidence that the parties intended to effect a novation through the various changes in the terms of Plaintiffs' employment.  Nor does Defendant argue that the oral modifications to the offer letters altered the Stock Option Provision or the parties' agreement to negotiate.  Therefore, the changes in Defendant's terms of employment do not act to eliminate the underlying written contract.

### 2.  Mutual Breach of Contract

Defendant argues that even if a valid contract to work together to establish performance criteria was formed, Plaintiffs cannot enforce that provision because they also failed to work together with Defendant.  "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).  Here, the record is unclear as to what communications occurred between the parties in the month that was provided in the offer letters for the parties to "work together."  However, it is clear that Chen and Manindra inquired about the stock options before and after the one-month period with their questions to Kasitz and Lamb.  Defendant would have the Court find, as a matter of law, that Plaintiffs have not met their

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    obligations because they did not affirmatively "propose performance criteria." Mot. at 13.

2    However, given the regular inquiries that Chen and Manindra made to Defendant about their stock

3    options, there is at least a question of fact as to whether either Plaintiffs or Defendant breached the

4    agreement to "work together."

5          Accordingly, because the parties entered an agreement to negotiate and establish

6    performance criteria, but any agreement to actually establish performance criteria was an

7    unenforceable agreement to agree, the Court GRANTS Defendant's motion for summary

8    judgment on Plaintiffs' contract claim to the extent it is based on a failure to establish performance

9    criteria, and DENIES Defendant's motion for summary judgment on Plaintiffs' breach of contract

10   claim to the extent it is based on a breach of the agreement to negotiate.

11   **B.**     **Breach of the Implied Covenant of Good Faith and Fair Dealing**

12         Under California law, "[e]very contract imposes on each party a duty of good faith and fair

13   dealing in each performance and its enforcement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th

14   409, 429 (2012) (internal quotation marks omitted). "The covenant 'is based on general contract

15   law and the long-standing rule that neither party will do anything which will injure the right of the

16   other to receive the benefits of the agreement.'" *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732

17   F. Supp. 2d 952, 968 (N.D. Cal. 2010) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1,

18   36 (1995)). In order to establish a breach of the covenant of good faith and fair dealing, a plaintiff

19   must show: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under

20   the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the

21   defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and

22   (5) the plaintiff was harmed by the defendant's conduct." *Id.*

23         In Defendant's motion for summary judgment, Defendant argues that Plaintiffs' claim for

24   breach of the implied covenant of good faith and fair dealing fails because (1) no contract was

25   formed, and (2) even if a contract was formed, the offer letter indicated that the grant of the

26   options was subject to the approval of the Compensation Committee on Defendant's Board of

27

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

1    Directors.  As to the first argument, Defendant's argument fails to the extent the Court found,

2    above, that a contract was formed.

3            As to the second argument, Defendant expressly abandons the argument in its reply brief

4    by stating that Defendant never actually raised the argument in Defendant's motion for summary

5    judgment.  *See* Reply at 9 ("[S]ince FleetCor did not advance this argument in its motion, it will

6    not respond to plaintiffs' argument.").  However, even if not abandoned, the argument fails.  It is

7    true that "courts are not at liberty to imply a covenant directly at odds with a contract's express

8    grant of discretionary power . . . ."  *Oracle Corp. v. Falotti*, 319 F.3d 1106, 1112 (9th Cir. 2003)

9    (citation omitted) ("Oracle bargained for its right to retain discretion under the Stock Option

10   Agreement.").  However, as discussed above, the Stock Option Provision stated the following:

> You will be awarded 10,000 of FleetCor Performance Stock Options.  We will
> work together to establish the performance criteria over the next month.  These
> options require Board approval which we will seek as soon as administratively
> practical.  All options will be granted at the then fair market value.

13   Chen Offer Letter at 1.  From this provision, it is clear that Defendant had the obligation to work

14   together with Plaintiffs to establish criteria and submit those criteria to the Board of Directors'

15   Compensation Committee.  Only after those obligations were satisfied was the Board's discretion

16   at issue.  Because the breach of contract claim at issue here occurred as a result of Defendant's

17   alleged failure to work together with Plaintiffs to establish performance criteria, and that

18   obligation was not subject to the Board's approval or discretion, Plaintiff's claim for breach of the

19   implied covenant of good faith and fair dealing survives.

20           Accordingly, the Court DENIES Defendant's motion for summary judgment as to

21   Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

22           **C.      Common Count – Services Rendered**

23           Under California law, "[a] common count is not a specific cause of action . . . rather, it is a

24   simplified form of pleading normally used to aver the existence of various forms of monetary

25   indebtedness."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004) (citations omitted).  The

26   elements of a claim for common counts are: (1) the statement of indebtedness in a certain sum, (2)

27                                                          20

United States District Court
Northern District of California

1    the consideration, and (3) nonpayment.  *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445,

2    460 (1997).  "'When a common count is used as an alternative way of seeking the same recovery

3    demanded in a specific [claim], and is based on the same facts,' it does not survive if the

4    underlying claim does not survive." *McAfee v. Francis*, 2011 WL 3293759, at *2 (N.D. Cal. Aug.

5    1, 2011) (citing, *inter alia, McBride*, 123 Cal. App. 4th at 394 ("[The Plaintiff's] common count

6    must stand or fall with his first cause of action.")).

7           Under the common count, Plaintiffs' complaint asserts that the offer letters "required

8    [Defendant] to vest" Chen and Manindra in all of their stock options, and that Defendant "refused

9    to vest Manindra and Chen in these options and failed to establish any performance criteria for

10   such vesting." Compl. ¶ 28.  As a result, Plaintiffs allege that Defendant owes Plaintiffs "the [full]

11   value of their services," that is, the value of all of the stock options after vesting. *Id.*  However,

12   above, the Court held that the offer letters did not obligate Defendant to actually establish

13   performance criteria.  Additionally, the Court held that even if such an obligation existed,

14   Defendant would not owe Plaintiffs the value of all of the stock options because there is no way to

15   know whether the performance criteria would have actually allowed Plaintiffs to vest in all of their

16   remaining stock options.

17          Instead, the Court held that the Stock Option Provision contained an agreement to

18   negotiate the establishment of performance criteria, for which only reliance damages is available.

19   Plaintiffs' common count claim contains no allegation of "indebtedness" for reliance damages.

20   Accordingly, because the common count relies on theories of the underlying claim and damages

21   that fail, Plaintiff's claim for common count does not survive. *See McAfee v. Francis*, 2011 WL

22   3293759 at *2 ("When a common count is used as an alternative way of seeking the same

23   recovery demanded in a specific [claim], and is based on the same facts,' it does not survive if the

24   underlying claim does not survive").

25          Nonetheless, Plaintiffs argue that the common count claim can exist independently of the

26   breach of contract claim because it is a claim for "services rendered," which allows recovery on

27

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1  contracts that are "implied in law." *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 793 (1953) ("[T]he

2  common counts are sufficient to state a cause of action upon either a contract implied in fact or a

3  contract implied in law."); *Kawasho Int'l U.S.A. Inc. v. Lakewood Pipe Serv., Inc.*, 152 Cal. App.

4  3d 785, 793 (1983) (adopting *Weitzenkorn*).  A contract implied in law is "based upon benefit

5  accepted or derived for which the law implies an obligation to pay."  *Weitzenkorn*, 40 Cal. 2d at

6  794.  However, "it is well settled that there is no equitable basis for an implied-in-law promise to

7  pay reasonable value when the parties have an actual agreement covering compensation."

8  *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1419 (1996) (citation

9  omitted).  Here, although the Court held that any agreement to establish performance criteria was

10  an unenforceable agreement to agree, the Court found that the offer letters constituted valid

11  contracts of at-will employment for a base salary, bonuses, and an agreement to negotiate

12  concerning performance criteria.  Thus, because the parties have "an actual agreement covering

13  compensation," Plaintiffs cannot rely on a contract implied in law theory.

14         Accordingly, the Court GRANTS Defendant's motion for summary judgment as to

15  Plaintiffs' common count cause of action.

16         **D.      Negligent Misrepresentation**

17         The elements of negligent misrepresentation are "'(1) the misrepresentation of a past or

18  existing material fact[;] (2) without reasonable ground for believing it to be true[;] (3) with intent

19  to induce another's reliance on the fact misrepresented[;] (4) justifiable reliance on the

20  misrepresentation[;] and (5) resulting damage.'"  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.

21  Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009) (quoting *Apollo Capital

22  Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)).

23         Under California law, "a negligent misrepresentation must ordinarily be as to past or

24  existing material facts.  '[P]redictions as to future events, or statements as to future action by some

25  third party, are deemed opinions, and not actionable fraud.'"  *Tarmann v. State Farm Mut. Auto.

26  Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (citations omitted).  Although a promisor may be held

27

28  Case No. 16-CV-00135-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT

1    liable for intentional misrepresentations for a false promise that "was intended to deceive or

2    induce the promisee to do or not do a particular thing," a claim for negligent misrepresentation has

3    no such specific intent requirement and therefore "does not constitute an [actionable] false

4    promise." *Id.* at 158–59.

5           Plaintiffs argue that negligent misrepresentations were made by Kasitz and Lamb before

6    and after Plaintiffs were hired.  First, Plaintiffs argue that "in March and April of 2013, Lamb and

7    Kasitz represented that [Chen and Manindra] could and/or would vest in all of their Options after

8    one year of employment."  Opp'n at 21.  Second, Plaintiffs argue that "later in 2013 Lamb

9    promised [that Chen and Manindra] would vest in 50% of their Options in 2014."  *Id.*  Third,

10   Plaintiffs argue that in 2014, "Lamb promised [Chen and Manindra that] they would vest in 50%

11   of their Options in 2015 and 25% in 2016."  *Id.*

12          Defendant argues that "all of the alleged comments relate to future events—plaintiffs'

13   vesting in their stock options," and therefore are nonactionable "[p]redictions as to future events."

14   Mot. at 22; *Tarmann*, 2 Cal. App. 4th at 158.  The Court agrees that Lamb's and Kasitz's

15   statements are nonactionable predictions as to future events.  Kasitz's and Lamb's alleged

16   misrepresentations are all statements that Plaintiffs' stock options would vest in a certain

17   percentage in the future.  There is evidence that Kasitz and Lamb stated that the stock options

18   would all vest after one year of employment, that Lamb then revised that estimate to 50% after one

19   year of employment, and that after Plaintiffs only vested in 25% in the first year, Lamb then

20   promised that there would be 50% vesting in the second year of employment.  These are

21   representations that, in the future, a certain percentage of Plaintiffs' stock options would vest.

22   Such representations do not pertain to "past or then-existing" facts.

23          In response, Plaintiffs argue that "the statements related to vesting criteria that FleetCor

24   asserted were currently in effect."  Opp'n at 21.  Plaintiffs' argument is wrong for two reasons.

25   First, the alleged misrepresentations did not indicate what performance criteria were in effect, but

26   solely indicated the percentage of stock options that would vest if undefined performance criteria

27

United States District Court
Northern District of California

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

23

were satisfied.  *See* Chen Decl. ¶ 6 ("I was told by Kasitz that all of the Options would vest after my first year of employment *if we did well*."  (emphasis added)).  Thus, the alleged misrepresentations constitute conditional promises of future performance.

Second, a promise of future performance is not transformed into a statement of then-existing fact simply because the misrepresentation describes a contractual obligation or policy that promises future performance.  A district court in the Eastern District of California addressed a similar question in *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983 (E.D. Cal. 2012).  In that case, the defendant had sent a letter stating that the defendant would indemnify the plaintiff for any liability arising from technology the plaintiff had purchased from the defendant.  *Id.* at 995.  After a lawsuit based on the technology, the defendant refused to indemnify the plaintiff, and the plaintiff sued the defendant for negligent misrepresentation.  *Id.* The plaintiff argued that the letter promising indemnification constituted a statement of "existing fact" because the letter "was a statement conveying [the defendant's] existing policies with respect to indemnification."  *Id.*  The *Foster* court disagreed and dismissed the plaintiff's negligent misrepresentation cause of action because "[a]t bottom, [the plaintiff] is alleging that [the defendant] breached a promise to indemnify Foster Farms in the future."  *Id.*

Similarly, here, Plaintiffs allege that Defendant has breached the promises made by Kasitz and Lamb on its behalf to vest a certain percentage of stock options in the future.  Moreover, just as the indemnification letter in *Foster* was not a statement of then-existing fact because it described the *Foster* defendant's policies at the time, the representations regarding future vesting are not transformed into a statement of then-existing fact because it described the terms of the stock options that were awarded to Plaintiffs.

Accordingly, because the misrepresentations at issue in this case are not statements of "past or then-existing" material fact, Plaintiffs' claim for negligent misrepresentation fails.  Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiffs' negligent misrepresentation claim.

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### E.   Fraudulent Concealment

"The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (quoting *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014)).  "Concealment is a term of art which includes mere nondisclosure when a party has a duty to disclose." *Lovejoy v. AT & T Corp.*, 119 Cal. App. 4th 151, 158 (2004).

"Liability is imposed for concealment where the defendant is in a fiduciary or other confidential relationship that imposes a duty of disclosure."  5 Witkin, Summary of California Law, Torts § 794 (10th ed. 2005) (listing fiduciary relationships, which include corporate directors and shareholders, stockbrokers and their customers, and joint venturers).  Additionally, "[i]n transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; [or] (3) the defendant actively conceals discovery from the plaintiff." *Warner Constr. Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970).

Plaintiffs argue that Defendant concealed that (1) the vesting decisions were solely in the discretion of Defendant's CEO, Ronald Clarke, (2) the performance criteria set by Lamb for the 2013-2014 year (initially stated to be 100% and later stated to be 50%) were not approved by the Board's Compensation Committee, (3) Lamb's promise that Plaintiffs' stock options would vest 50% in 2015 and 25% in 2016 were not approved by the Board's Compensation Committee, (4)

25

the performance criteria for the 2014-2015 year were based on the apps on which Chen and Manindra ceased work by July of 2014, (5) the 2014-2015 performance criteria were unlikely to ever vest, and (6) Plaintiffs were evaluated on "stretch goals."  Opp'n at 22–25.

In Defendant's motion for summary judgment, Defendant makes three arguments. Defendant contends that (1) there is no evidence that Defendant intentionally concealed this information from Plaintiffs, (2) Defendant was unaware of some of the allegedly concealed facts, and (3) Defendant did not conceal, and in fact disclosed, some of these facts.  The Court addresses each argument in turn.

### 1.    Intent to Conceal

Defendant asserts that there is no evidence that Defendant had an intent to conceal facts from Plaintiffs.  "[T]he only intent by a defendant necessary to prove a case of fraud is the intent to *induce reliance*." *Lovejoy*, 92 Cal. App. 4th at 93.  Fraudulent intent "may be proved by inference and by the circumstances surrounding the transaction and the relationship and interests of the parties." *Hart v. Browne*, 103 Cal. App. 3d 947, 957 (1980).  Nondisclosure combined with a potential motive to defraud is sufficient to defeat summary judgment on the issue of fraudulent intent.  *See Lovejoy*, 119 Cal. App. 4th at 96 ("It may be inferred that [the defendant] concealed the [fact at issue] with fraudulent intent, for the purpose of making a profit . . . .").[4]

For the reasons discussed below, the Court finds that there is significant evidence in the record that supports Plaintiffs' assertion that Defendant intended to induce Plaintiffs' reliance through concealment.  On May 5, 2014, Lamb created performance criteria for the 2014-2015 vesting period and proposed them to the Board's Compensation Committee.  ECF No. 58-1 at 174. These proposed criteria were based on the success of a particular app on which Chen and Manindra had been working.  *Id.*  In June or July 2014, Chen and Manindra then were transferred

---

[4] Before the Court turns to the evidence of intent, the Court notes that the relevant parties are Clarke, Defendant's CEO; Williams, Defendant's Global Vice President of Human Resources; Lamb, Plaintiffs' former supervisor and an officer of Defendant; and Kasitz, a human resources employee at Defendant.

26

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

out of the division that worked on the app that was part of the performance criteria.  Chen Decl. ¶ 12; Manindra Decl. ¶ 12.  Even though Lamb knew that Chen's and Manindra's transfer would have a negative impact on the success of the app, and thus the performance criteria, Lamb never told Chen and Manindra either of those facts.  May 22, 2014 Email.

Moreover, in November 14, 2014, Lamb sent an email to another employee that stated that "[i]t is looking highly unlikely that any of [the options in Lamb's division] will vest beyond what was vested last year."  ECF No. 58-1 at 168.  By the end of 2014, Lamb and Williams knew that "it was certain" that the app-based performance criteria proposed by Lamb would not be achieved because Chen's and Manindra's former "division was failing."  Williams Depo. at 69.  Even then, Defendant and its officers did not inform Chen and Manindra about Lamb's proposed performance criteria for the vesting of their stock options.  Lamb admits in his deposition that relevant information was withheld from Plaintiffs.  ECF No. 58-1 at 152–53, Lamb Depo. at 146–43 ("[Y]ou would agree that there was a failure to disclose material facts about their options? . . . A. Yes").

Furthermore, in the course of the 2014-2015 vesting period, Chen and Manindra sent repeated inquiries to Williams and other employees of Defendant about when the options would vest.  On September 3, 2014, Manindra emailed Williams about the vesting of his stock options, and from April 2015 to June 2015 sent Williams six emails about the vesting of the stock options.  ECF No. 58-3 at 12; Manindra Decl. ¶ 16.  Moreover, Chen emailed his then-supervisor Reed in February 2015 and August 2015 to ask about both his and Manindra's stock options.  ECF No. 58-1 at 207–08.

Then, when Williams and Lamb were asked directly in June 2015 by Defendant's CFO about the vesting of Plaintiffs' stock options, Williams provided strategies for what to tell Plaintiffs.  She stated that Defendant could say that "no criteria was established or the criteria wasn't met and the shares were forfeited.  The second is more convenient, but isn't quite true."  ECF No. 58-1 at 84–85.  It was only in August 2015 that Chen and Manindra were informed that

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    the 2014-2015 performance criteria were based on the apps on which they had ceased working by

2    July 2014.  Chen Decl. ¶ 12; Manindra Decl. ¶ 12.

3         The parties do not dispute that Chen and Manindra were employees that Defendant wanted

4    to retain.  *See, e.g.*, ECF No. 58-1 at 107, Lamb Depo. at 27 (indicating that Chen was a "key

5    employee"); ECF No. 58-1 at 91, Deposition of Ronald Clarke ("Clarke Depo.") at 14 (indicating

6    that 25% vesting was awarded in 2014 for "employee retention").  For example, the acquisition of

7    TeleNav's business enterprise unit would not have gone forward had Chen not agreed to become

8    an employee of Defendant.  Lamb Depo. at 27.  Chen and Manindra worked on projects under

9    Lamb, and Lamb considered them important to the success of his division.  *See* May 22, 2014

10   Email (indicating that Chen's transfer would have a detrimental impact on the development of the

11   apps); Williams Depo. at 177.  The record indicates that Chen and Manindra performed well in

12   their roles while working for Defendant.  Chen Decl. ¶ 17; Manindra Decl. ¶ 18.

13        This series of events indicates that Defendant and its officers knew and did not inform

14   Plaintiffs of the app-based performance criteria for 2014-2015, knew and did not inform Plaintiffs

15   that those performance criteria would not be met by the end of 2014, and knew that failing to

16   inform Plaintiffs of these performance criteria induced Plaintiffs to remain employees of

17   Defendant.  The Court finds that this evidence supports Plaintiffs' contention that Defendant

18   intended to induce Plaintiffs' reliance—Plaintiffs' continued employment at Defendant—by

19   concealing relevant information.

20        Evidence in the record shows that a similar series of events occurred with respect to the

21   2013-2014 vesting period.  As noted above, evidence in the record shows that Defendant wanted

22   to hire and retain Chen and Manindra.  *See, e.g.*, ECF No. 58-1 at 107, Lamb Depo. at 27

23   (indicating that Chen was a "key employee"); Clarke Depo. at 14 (indicating that 25% vesting was

24   awarded in 2014 for "employee retention").

25        Moreover, Chen and Manindra state that they would not have started working for

26   Defendant without the offer of stock options that would actually vest.  *See* Chen Decl. ¶ 7

27                                                          28

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

1    (indicating Chen would not have accepted job "if I knew the company would not create vesting

2    criteria for the Options"); Manindra Decl. ¶ 7 (same); Chen Depo. at 192–93 (indicating that Chen

3    began looking for a job when he found out his stock options would not vest); Manindra Depo. at

4    101 (same).

5          Defendant was put on notice of the importance of the stock options to Chen and Manindra.

6    Chen and Manindra both asked Kasitz questions about the vesting of their stock options before

7    they were hired.  Chen Decl. ¶ 10; Mandindra Decl. ¶ 10.  Chen asked Lamb about the vesting of

8    stock options after he was hired, and Chen relayed that information to Manindra.  Chen Decl. ¶ 13.

9    Additionally, Lamb indicated in his deposition that he had conversations with Chen and Manindra

10   "throughout" 2013 about the vesting of stock options.  ECF No. 58-1 at 124, Lamb Depo. at 69.

11         Finally, Kasitz informed Chen and Manindra that 100% vesting could occur and Lamb

12   informed Chen that 50% vesting could occur after Plaintiffs' first year working for Defendant.

13   Chen Decl. ¶¶ 10–12; Manindra Decl. ¶¶ 10–12.  However, Chen and Manindra state that they

14   were never informed of the performance criteria they needed to satisfy, or whether performance

15   criteria had been approved by the Board's Compensation Committee.  Chen Decl. ¶¶ 10–12;

16   Manindra Decl. ¶¶ 10–12.

17         Thus, evidence in the record shows that (1) Defendant wanted to hire and retain Plaintiffs

18   in 2013-2014, (2) Plaintiffs would not have worked for Defendant without the availability of stock

19   options, (3) Defendant knew that the vesting of the stock options was important to Plaintiffs, and

20   (4) Defendant never told Plaintiffs what the performance criteria were for 2013-2014 and whether

21   the performance criteria were approved by the Board's Compensation Committee.  This is

22   evidence that Defendant intended to induce Plaintiffs' reliance through concealment of material

23   information.

24         Thus, during both the 2013-2014 and 2014-2015 vesting periods, the Court finds that the

25   record contains strong evidence of Defendant's intent to induce Plaintiffs' reliance.  *See Locke v.*

26   *Warner Bros., Inc.*, 57 Cal. App. 4th 354, 368 (1997) ("[F]raudulent intent must often be

27

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1 | established by circumstantial evidence.").[5]

2 | **2.      Defendant's Knowledge**

3 | Defendant argues that it was unaware of some of the allegedly concealed facts, and thus

4 | that it could not have had a duty to disclose facts of which it was unaware.[6] As noted above, the

5 | following facts were allegedly concealed (1) the vesting decisions were solely in the discretion of

6 | Defendant's CEO, Ronald Clarke, (2) the performance criteria set by Lamb for the 2013-2014 year

7 | (initially stated to be 100% and later stated to be 50%) had not been approved by the

8 | compensation committee, (3) Lamb's promise that Plaintiffs' stock options would vest 50% in

9 | 2015 and 25% in 2016 had not been approved by the compensation committee, (4) the

10 | performance criteria for the 2014-2015 year were based on the apps on which Chen and Manindra

11 | ceased work by July of 2014, (5) the 2014-2015 performance criteria were unlikely to ever vest,

12 | and (6) Plaintiffs were evaluated on "stretch goals."  Opp'n at 22–25.  However, the record

13 | indicates that Defendant's officers were aware of the above facts at least at some point during the

14 | time when Plaintiffs worked for Defendant.

15 | First, with respect to the alleged concealment of Clarke's discretion, the deposition

16 | testimony of Clarke indicates that he and executives like Lamb and Williams knew that the

17 | decisions regarding stock options all involved Clarke.  *See* ECF No. 58-1 at 88, Clarke Depo. at 6

18 |

19 | [5] Defendant attempts to import the standard for a promissory fraud cause of action even though Plaintiffs have not asserted such a cause of action.  *See* Mot. at 18; Reply at 11.  Specifically,

20 | Defendant argues that no fraudulent intent was shown "at the time the alleged statements about their performance criteria and vesting were made."  Mot. at 18.  However, under a fraudulent

21 | concealment claim, the fraudulent intent need not exist at the time the relevant statements were made, but at any time when a duty to disclose the facts existed.  Thus, Defendant's promissory

22 | fraud arguments are inapposite.

[6] Although Defendant raises the issue of a "duty to disclose" in the context of Defendant's

23 | knowledge of the relevant facts, Defendant does not otherwise argue that no duty to disclose existed in the instant case.  As discussed above, absent a fiduciary relationship, a duty to disclose

24 | only arises where "(1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts

25 | are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; [or] (3) the defendant actively conceals discovery from

26 | the plaintiff."  *Warner*, 2 Cal. 3d at 294.  Defendant makes no argument concerning these factors. Accordingly, the Court does not address a "duty to disclose" except to the extent raised by

27 | Defendant.

28 | Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

("I would say that the executive team people that report to me, again, would practically be aware that all equity approvals run through me and through the comp committee; that they don't have the power to approve things."). Indeed, Clarke exercised his discretion after the first year by vesting 25% of Chen's and Manindra's stock options rather than 50%. *Id.* Thus, it is possible to infer that Clarke, Lamb, and Williams, as officers of Defendant, knew that the determination of what performance criteria would be adopted were in Clarke's discretion.

Second, the Court addresses (1) Defendant's knowledge that performance criteria were never approved by the Board's Compensation Committee in 2013-2014 and 2014-2015, and (2) that Plaintiffs were going to be evaluated on "stretch goals" for the purposes of the stock options. Lamb indicates that he had submitted performance criteria proposals and that he knew that his proposals for performance criteria were never approved at any point from 2013 to 2015. ECF No. 58-1 at 123–24, Lamb Depo. 68–69. Williams and Clarke also knew that the performance criteria had not been approved because they were in charge of bringing performance criteria proposals to the Board's Compensation Committee. ECF No. 58-1 at 88, Clarke Depo. at 6. Clarke also indicated in a deposition that all of his executives knew that Plaintiffs were being evaluated on "stretch goals." ECF No. 58-1 at 95, Clarke Depo. at 24 ("We tell [the company's executives]—we try to set criteria that are not laydowns. We try to set criteria that are not moonshots, but that they are right of center, and that getting paid lots of money requires challenging performance goals to be met."). Therefore, Defendant's executives were aware that Lamb's criteria were not approved and that the policy was to establish challenging performance goals.

Third, with respect to the alleged concealment of the fact that the performance criteria for 2014-2015 were based on apps on which Plaintiffs ceased work by July 2014, Defendant was aware of those criteria. In fact, Lamb created those criteria and submitted them to the Board's Compensation Committee for approval. ECF No. 58-1 at 174. Therefore, Defendant had knowledge that Chen and Manindra were potentially going to be evaluated based only on the success of the apps.

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1    Fourth, the Court addresses the allegation that Defendant concealed the fact that there was

2    no possibility of any stock options vesting for 2014-2015.  By November 2014, the record shows

3    that Williams and Lamb knew that it was highly unlikely that the stock options would vest based

4    on the criteria proposed by Lamb, ECF No. 58-1 at 168, and by the end of 2014 it was certain they

5    would not vest, ECF No. 58-1 at 15, Williams Depo. at 69.  Therefore, as of the end of 2014, there

6    is evidence in the record that Defendant had knowledge that the stock options would not vest.

7    Thus, Defendant's argument that Defendant had no knowledge of the facts that were

8    allegedly concealed is incorrect.  As discussed above, Defendant had knowledge through its agents

9    of all of the allegedly concealed facts.

10    ### 3.    Plaintiffs' Knowledge

11    Defendant argues that Plaintiff was actually informed of some of these allegedly concealed

12    facts.  First, the Court addresses the contention that discretion was "solely vested" in Clarke for

13    the establishment of performance criteria.  Defendant argues that Plaintiffs were informed of that

14    fact by the offer letters themselves.  The Stock Option Provision in the offer letters states that the

15    Board would need to approve all options and provides no substantive standard for such approval.

16    *See* Chen Offer Letter at 1.  The Stock Option Provision does not mention Clarke, his position, or

17    his role at all.  The provision does not inform Plaintiffs that all stock option performance criteria

18    were subject to Clarke's veto before reaching the Board's Compensation Committee.  *See* ECF

19    No. 58-1 at 88, Clarke Depo. at 6 ("I would say that the executive team people that report to me,

20    again, would practically be aware that all equity approvals run through me and through the comp

21    committee; that they don't have the power to approve things.").  Accordingly, Plaintiffs were not

22    informed of Clarke's discretionary power over the performance criteria by the offer letters.

23    Second, Lamb states that the following statement was "correct" for the 2013-2014

24    performance criteria: "[Plaintiffs] proceeded with the understanding that if certain [financial]

25    targets were met they would vest in 50 percent of their performance options."  ECF No. 58-1 at

26    124, Lamb Depo. at 69.  Thus, Defendant contends that Plaintiffs knew what the performance

27

28    Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

criteria were for the 2013-2014 vesting period.  Regardless, it is undisputed that vesting criteria were never actually approved by the Board's Compensation Committee for the 2013-2014 vesting period, and Defendant does not point to evidence that Plaintiffs knew that fact.  Moreover, Chen and Manindra state that when they vested in 25% of their stock options rather than 50% of their stock options for the 2013-2014 vesting period, they "never knew what [performance] criteria were used to make that decision."  Chen Decl. ¶ 12; Manindra Decl. ¶ 12.  Accordingly, the evidence is in conflict with respect to whether Plaintiffs were informed of what the performance criteria were for the 2013-2014 vesting period and whether those performance criteria had been approved by the Board's Compensation Committee.  Thus, Plaintiffs' alleged knowledge of the 2013-2014 performance criteria does not justify granting summary judgment.

Accordingly, because Defendant does not challenge any other aspect of Plaintiffs' fraudulent concealment cause of action, the Court DENIES Defendant's motion for summary judgment with respect to the fraudulent concealment claim.

### F.      Evidentiary Objections

In Defendant's Reply, Defendant objects to much of the evidence relied upon by Plaintiffs in their opposition.  Defendant objects to (1) Chen's and Manindra's declarations, (2) the report of Fred Whittlesey, Plaintiffs' expert, and (3) the declaration of Thomas Erdman.

#### 1.      Chen and Manindra's Declarations

Defendant objects to Chen's Declaration, ECF No. 58-2, and Manindra's Declaration, ECF No. 58-3, and asserts that certain paragraphs contained improper "legal conclusions and opinions" under Federal Rule of Evidence 701, which can be struck pursuant to Civil Local Rule 7-5(b).  *See Gauntlett v. Illinois Union Ins. Co.*, 2011 WL 5191808, at *6 (N.D. Cal. 2011) ("[T]o the extent that Mr. Gauntlett makes legal arguments and conclusions, the Court will disregard his declaration.").  Federal Rule of Evidence 701 limits opinion testimony to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not  based on scientific, technical, or other

Case No. 16-CV-00135-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    specialized knowledge." Fed. R. Evid. 702.

2         Specifically, Defendant objects to paragraphs 15, 19, and 20 of Chen's declaration and

3    paragraphs 14, 19, and 20 of Manindra's declaration.  In paragraph 15 of Chen's Declaration and

4    paragraph 14 of Manindra's declaration, Chen and Manindra assert that Williams "actively

5    concealed" information in her correspondence with Chen and Manindra.  The term "actively

6    concealed" is used after a sentence in which Chen and Manindra declare that Williams failed to

7    include certain information in emails to them.  Although use of the term "actively concealed" is

8    similar to the "intentional concealment" requirement of a fraudulent concealment cause of action,

9    it also can be read as a factual description of Williams's actions rather than a legal conclusion.

10   Accordingly, the objection is OVERRULED as to that specific phrase.

11        With respect to paragraphs 19 of the Chen and Manindra declarations, Chen and Manindra

12   express opinions on whether FleetCor violated the terms of Chen's and Manindra's offer letters.

13   *See* Chen Decl. ¶ 19 ("FleetCor breached the [offer letter] because it never created any vesting

14   criteria for 75% of the Options even though the [offer letter] required that it do so.").  Normally,

15   claims about the obligations of a party under a contract "are legal arguments and conclusions

16   which fail the admissibility requirements" because they are not "admissible facts." *Gauntlett*,

17   2011 WL 5191808 at *6 (disregarding declaration concerning obligations under a contract).

18   However, one aspect of the instant Motion is Chen's, Manindra's, and FleetCor's understanding of

19   the terms of the offer letters at the time they were signed.  Thus, the Court OVERRULES

20   Defendant's objection as to paragraphs 19 because the Court may consider paragraphs 19 as parol

21   evidence of the parties' understanding of their contractual relationship.

22        With respect to paragraphs 20 of the Chen and Manindra declarations, Chen and Manindra

23   express opinions on whether Defendant's actions satisfy the requirements of the torts of fraudulent

24   concealment and negligent misrepresentation.  "These statements are not facts; they are legal

25   arguments and conclusions which" are inadmissible. *Id.*  Accordingly, the Court SUSTAINS

26

27                                                34

28   Case No. 16-CV-00135-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

Defendant's objection as to paragraphs 20 of the Chen and Manindra declarations.[7]

### 2.    Whittlesey Report

Defendant argues that the report of Fred Whittlesey, Chen and Manindra's expert, is not proper evidence because expert witness reports are not submitted under "penalty of perjury." Defendant is incorrect for two reasons.  Defendant relies on *EPIS, Inc. v. Fidelity & Guaranty Life Insurance Co.*, 156 F. Supp. 2d 1116 (N.D. Cal. 2001), which states that the expert reports at issue in that case were excludable partly because "the reports themselves are not submitted under penalty of perjury as required by Rule 5[6](e)." *Id.* at 1124.  However, the 2010 amendments to the Federal Rules of Civil Procedure eliminated the penalty of perjury requirement in Rule 56(e) so long as the evidence would otherwise be admissible.  Indeed, the commentary to the 2010 amendment explains that "[t]he requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record."  Fed. R. Civ. P. 56 cmt. 2010 amendments, subdivision (c)(4).  The Whittlesey Report was submitted as a "true and correct copy" of the report in a sworn affidavit.  ECF No. 58-1 at 1–2.  Nothing more is required under Rule 56.  Accordingly, Defendant's objection is OVERRULED.

### 3.    Organization Chart

---

[7] Defendant also challenges the statements in the Chen and Manindra declarations to the extent they contradict their prior deposition testimony.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Defendant, however, does not point to any particular contradictory statements.  Instead, in the negligent misrepresentation section Defendant objects to Plaintiffs' statements that "'they could and/or would vest' in all of their options after one year of employment."  Reply at 12.  Defendant argues that this statement is inconsistent with Plaintiffs' deposition testimony in which Plaintiffs indicated that they knew that the vesting would only occur if their unit was "doing well."

The Court does not find these statements to be inconsistent.  The declaration statements that all of the stock options would vest after one year speak only to the percentage that could potentially vest, and not to what requirements had to be satisfied for such vesting to occur.  As the Court concluded above, the record does not contain evidence that Plaintiffs thought the options were time-based, rather than performance-based, stock options.

35

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Defendant objects to the admissibility of an organizational chart submitted by Plaintiffs to

2   show who was the boss of who within FleetCor.  Defendant argues that the chart "was prepared by

3   plaintiffs' counsel and does not otherwise satisfy the standard set forth in Rule 56(c)."  Where

4   objections are insufficiently vague, the Court overrules such objections.  *Schaeffer v. Gregory Vill.*

5   *Partners, L.P.*, 105 F. Supp. 3d 951, 960 (N.D. Cal. 2015) (finding that vague objections were not

6   properly asserted).  Here, besides a vague reference to Rule 56(c), Defendant does not clearly

7   identify a basis for finding the organizational chart inadmissible.  Accordingly, Defendant's

8   objection is OVERRULED.

9             **4.      Erdman Declaration**

10   Defendant argues that portions of the declaration of Thomas Erdman, ECF No. 58-4, are

11   improper lay opinions under Federal Rule of Evidence 701 or improper legal arguments under

12   Federal Rule of Civil Procedure 56(c), which only allows admissible evidence of facts.  Defendant

13   raises its objections as to multiple paragraphs in the declaration that the Court addresses in turn.

14   First, Defendant objects to paragraph 4, in which Erdman states that because Chen and Manindra

15   told Erdman that "receiving stock options from FleetCor was important to them," that he

16   "personally believe[s] neither Chen nor Manindra would have accepted a job with FleetCor if they

17   had not been offered FleetCor stock options or a similar type of equity in the company."  This

18   opinion is "rationally based on the witness's perception" and therefore is admissible under Rule

19   701(a).

20   Second, Defendant objects to paragraph 16 of the Erdman Declaration as an improper

21   opinion because he states, "I believe the former TeleNav employees who joined FleetCor in 2013,

22   including me, Chen and Manindra, were the only FleetCor employees who were granted

23   "performance" options."  Apparently, Defendant finds this statement to be an improper lay

24   opinion because the statement starts with the phrase "I believe."  However, as used in this

25   sentence, the phrase "I believe" is equivalent to stating "as far as I know," and thus is not a lay

26   opinion at all, but a statement of the facts within Erdman's knowledge.

27

28   36

1    Third, Plaintiff objects to paragraph 17, 18, 21, 22, and 23 as containing improper lay

2  opinions or improper legal arguments.  These paragraphs, however, contain a mix of factual

3  statements ("I was never informed of [the fact that vesting was in the sole discretion of FleetCor's

4  CEO"), and legal arguments ("FleetCor breached its contract").  Erdman Decl. ¶ 17.  Accordingly,

5  to the extent these paragraphs make factual statements, the Court OVERRULES Defendant's

6  objection.  However, to the extent these paragraphs involve legal argument, the Court SUSTAINS

7  Defendant's objection.

8  **IV.    CONCLUSION**

9    For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary

10  Judgment with respect to Plaintiff's claims for Common Count – Services Rendered and Negligent

11  Misrepresentation, and DENIES Defendant's Motion for Summary Judgment with respect to

12  Plaintiffs' claim for Breach of Written Contract, Breach of the Implied Covenant of Good Faith

13  and Fair Dealing, and Fraudulent Concealment.

14  **IT IS SO ORDERED.**

15

16  Dated: March 23, 2017

17                                                     _Lucy H. Koh_____

18                                                     LUCY H. KOH
                                                       United States District Judge

19

20

21

22

23

24

25

26

27                                                     37

28  Case No. 16-CV-00135-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California